■ In the Matter of MARY E. DOLAN, Respondent, v. BERNARD LOTH, as Testamentary Guardian of the Persons and Property of WILLIAM HACKER and HANS HACKER, Appellant. — In this habeas corpus proceeding to determine the custody of two orphan children, William and Hans Hacker, their testamentary guardian appeals from an order of the Family Court, Orange County, dated March 6, 1973, which awarded custody of the children to their maternal aunt, the petitioner. Order reversed, on the facts and in the exercise of discretion, without costs, and custody of the children is awarded to Jeffrey and Caroline Levy (a young married couple of Cornwall, New York, with whom the children have been residing since January, 1973) for a period of one year from the date of the order to be entered hereon, at the termination of which period petitioner again may seek custody of the children, and then the Family Court shall determine, subject to this court's review, (1) whether the children shall be transferred to the custody of peititioner if she still seeks their custody, (2) whether the Levys may legally seek to adopt the children if they wish so to do, (3) whether the Levys should continue as foster parents of the children or (4) whether there should be another disposition concerning the children's custody. The parents of the children are deceased. Their father, William Penny Hacker died on June 16, 1972, a resident of Orange County. Before his death he was an eminent musical conductor and founder of symphony orchestras. He provided in a codicil to the will he executed in February, 1972, shortly before his death, that his attorney be appointed testamentary guardian of the children. William was then 12 and Hans 6 years of age. The mother, ·Rosalie Hacker, had died three years prior thereto. Before her marriage to the children's father she had been a Catholic. After her marriage, she adopted her husband's faith and they and their children attended a Protestant church. Rosalie's next of kin opposed the marriage. Petitioner had expressed animosity towards Rosalie and her husband during their marriage and thereafter. The father, during 1972, knowing that the children would become orphaned upon his death, explicitly stated in the above-mentioned codicil that he was firmly of the conviction that it would be very detrimental to the welfare of the children, culturally and otherwise, if any of his deceased wife's next of kin were to take custody of his children upon his death. Not only did he state this to be a fact in the codicil, but he also told his older sister, Mrs. Chegwin, the wife of a Protestant minister, of this conviction. Mrs. Chegwin so testified at a hearing herein. Further, he stated in the codicil that he knew that his wife had been of the same conviction and that his next of kin were too old to care for the children. He directed appellant to undertake to arrange for a young married couple with the same cultural interests that he and his children had to become the children's foster parents upon his death. Further, he told appellant that pending

such arrangement his housekeeper, Mrs. Welsh, should continue to care for the children. Mr. Hacker left a substantial estate, principally real estate in New York. Appellant was appointed the testamentary guardian of the persons and property of the children by the Surrogate's Court, Orange, County, where their father's will was probated. Two days after Mr. Hacker's death, petitioner sought the children's custody in this proceeding. The matter, after being returnable before the Special Term of Orange County, was transferred to the Family Court of Orange County. At a hearing held before that court on July 25, 1972 the children, who are very intelligent and mature beyond their years, made it very definite that they disliked petitioner and that under no circumstances would they want to be placed in her custody. At the time of that hearing, the children were living happily at their deceased father's farm in Orange County, being taken care of by Mrs. Welsh. Mrs. Welsh became ill and was hospitalized in September of 1972. Appellant then arranged for a young couple, Mr. and Mrs. Decker, to take care of the younsters. Hans was unable to adjust emotionally to Mrs. Decker (possibly as a result of the traumatic experiences of losing his mother when he was three and his father when he was six). Accordingly, commencing January, 1973, appellant placed the children with the Levys, who have been married for seven years. Each of the Levys is 28 years old. They reside in a town apartment house in Cornwall, New York. Mr. Levy had been a friend of Mr. Hacker's. Mrs. Levy had been William's Sunday School teacher. Both Levys are of the Protestant faith. Mr. Levy has a responsible position with I. B. M. The Levys are well educated. It appears that both children have been very happy with the Levys and have made many friends in their neighborhood. This case, in our opinion, presents a serious problem as to whether the children, against their wishes, should be placed in petitioner's custody and taken to Michigan, 1,000 miles away from their friends and familiar surroundings. We do not question petitioner's good faith. However, we are of the opinion that the welfare of the children would best be served if they remain in the custody of the Levys — certainly at least for another year. During that period, a caseworker of the Department of Social Services of Orange County can visit at the Levy home and report to the Family Court concerning how the. children are getting along. After the termination of that period, it is our view it could be more appropriately determined whether the Levys should be permitted to adopt the children or remain their foster parents or whether the custody of the children should be changed. Hopkins, Acting P. J., Latham, Gulotta, Christ and Brennan, JJ., concur.